UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------

IN RE HURRICANE SANDY CASES

THIS DOCUMENT APPLIES TO:                    14-cm-41

STEPHEN DWECK and SARISE DWECK,              No. 1:14-cv-06920-ERK-JMA
individually and on behalf of others similarly
situated,

        Plaintiffs                          **PLAINTIFFS' FIRST AMENDED
                                             COMPLAINT - CLASS ACTION
   -against-                       ALLEGATIONS**

                                             **JURY TRIAL: YES**
HARTFORD INSURANCE COMPANY OF
THE MIDWEST, HIRISE ENGINEERING, P.C.,
MATTHEW PAPPALARDO, NIELSEN,
CARTER, & TREAS, L.L.C, WILLIAM T.
TREAS, UNITED TECHNICAL
CONSULTANTS, L.L.C., GLENN GROGAN,
SIMSOL INSURANCE SERVICES, INC., and
VARONDA HAMILTON,

       Defendants.
------------------------------------------------------------

## INTRODUCTION

     Plaintiffs, Stephen Dweck and Sarise Dweck ("Plaintiffs" or "the Dwecks"), by and

through their attorneys, bring this individual and class action, pursuant to Rule 23 of the Federal

Rules of Civil Procedure, against Defendants HiRise Engineering, P.C. ("HiRise"), Matthew

Pappalardo ("Pappalardo"), Nielsen, Carter, & Treas, L.L.C. ("Nielsen Law Firm"), William T.

Treas ("Treas"), United Technical Consultants, L.L.C. ("United"), Glenn Grogan ("Grogan"),

Simsol Insurance Services, Inc. ("Simsol"), VaRonda Hamilton ("Hamilton"), and Hartford

Insurance Company of the Midwest ("Hartford") (collectively "Defendants") for violations of

RICO - 18 U.S.C. § 1962(c). Plaintiffs also bring causes of action against Defendant Hartford

for breach of contract and breach of implied covenant of good faith and fair dealing. Plaintiffs

allege the following upon information and belief, except as to those paragraphs pertaining to Plaintiffs' own actions, which are alleged upon personal knowledge. Plaintiffs believe that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>NATURE OF ACTION</u>

1.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their own behalf and on behalf of a class (the "Class") of similarly situated entities and individuals (the "Class Members") whose claim was denied in whole or in part based upon an engineering report that was altered by HiRise after the inspecting engineer's report was submitted to HiRise.

2.    This case involves a scheme whereby HiRise altered or manipulated engineering reports relied on to process insurance payments under the National Flood Insurance Program ("NFIP"). By altering the reports as described below, HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Hamilton, and Hartford benefitted from denial or underpayment of insurance claims. If claims were denied or underpaid, HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Hamilton and Simsol were able to incite and/or extend litigation and continue receiving assignments from Hartford. This allowed HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Hamilton and Simsol, to reap the benefit of unnecessary claims handling and litigation expenses. As more fully described below, Hartford participated in the scheme so that it could justify denying or underpaying claims. By denying or underpaying claims, Hartford avoided being audited by FEMA and potentially having to reimburse FEMA for prior payments

received and also received additional unwarranted payments from FEMA for administering the WYO program.

3.  Based on information and belief, Hartford denied Plaintiffs' insurance claim and denied or underpaid the claims of Class Members based upon fraudulently altered reports issued by HiRise. Hartford had knowledge of the fraud at the time the fraud was committed. In the alternative, Hartford was "willfully blind" or engaged in "conscious avoidance" regarding the illegal and fraudulent actions of HiRise. Therefore, Hartford is liable for the scheme and for damages suffered by Plaintiffs and Class Members.

4.  Defendants United, Grogan, Simsol, and Hamilton knew of the fraud or blindly accepted the fraudulent conclusions touted by HiRise and Pappalardo. On or about December 4, 2012, Hamilton conducted an inspection of Plaintiffs' property. Despite having first-hand knowledge of the extensive damage to the Dwecks' home, Hamilton did not authorize full payment of Policy benefits which the Dwecks' purchased. Hamilton did this in conjunction with Simsol to satisfy the desire of Hartford to reduce payments on covered losses. United, Grogan, Hamilton, and Simsol knew that if they did not work in concert with Hartford and its engineer consultants to diminish insurance claims, United, Grogan, Hamilton, and Simsol would not receive additional or future claims assignments from Hartford.

5.  Based on information and belief and as fully set forth below, Nielsen Law Firm and Treas knew about, participated in, and/or directed the scheme. In the alternative, Nielsen Law Firm and Treas are liable for the scheme under the doctrine of conscious avoidance.

6.  Plaintiffs and others similarly situated had valid insurance claims denied in whole or in part based on the scheme. Plaintiffs were deprived of thousands of dollars in insurance

proceeds as a result of the Defendants' unlawful scheme. HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford used mail, telephone, facsimile, and/or email to transact the scheme.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §§1961, 1962, 1964, 28 U.S.C. §§1331 and 1367. The Court has personal jurisdiction over defendants pursuant to 18 U. S. C. §1965 (a) (b) and (d) as Defendants transacted their affairs in this district and the ends of justice require that Defendants be brought before this Court.

8. This action arises under the National Flood Insurance Act, as amended, 82 Stat. 583, 42 U.S.C. Section 4001, et. seq., pursuant to the flood insurance policy issued to Plaintiffs by Hartford in its capacity as a WYO carrier under the Act.

9. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 4053 and 42 U.S.C. § 4072, which grant the United States District Court original exclusive jurisdiction to hear and determine an action involving a disallowance or partial disallowance by the Defendant of Plaintiffs' covered flood insurance claim, without regard to the amount in controversy.

10. This Court is a proper venue for this action pursuant to 18 U.S.C. §1965 (a) and 28 U.S.C. §1391 (b) (2). Venue is proper in this judicial district because it is where a substantial part of the events at issue took place.

## PARTIES

11.     Plaintiffs Stephen Dweck and Sarise Dweck are individuals who are citizens of the State of New York and who reside in this judicial district at 56 Dover Street, Brooklyn, New York (the "Premises").

12.     Defendant HiRise Engineering, P.C. is a professional corporation that is incorporated under the laws of the State of New York and with its principal place of business in Uniondale, New York. HiRise participated in the scheme to defraud as more fully described herein and is liable to Plaintiffs for the damage suffered by Plaintiffs.

13.     Defendant Matthew Pappalardo is an individual and a citizen of the State of New Jersey. Defendant Pappalardo worked for Defendant HiRise and participated in the scheme as more fully described below and is liable to Plaintiffs for the damage suffered by Plaintiffs.

14.     Defendant Nielsen, Carter, & Treas, L.L.C. is a limited liability company incorporated under the laws of the State of Louisiana and with its principal place of business in Metairie, Louisiana.  Nielsen Law Firm is a law firm that participated in and/or directed the scheme to defraud as more fully described herein and is liable to Plaintiffs for the damage suffered by Plaintiffs.

15.     Defendant William T. Treas is an individual and a citizen of the State of Louisiana. Defendant Treas is a principal of Defendant Nielsen Law Firm who participated in and/or directed the scheme to defraud as more fully described herein and is liable to Plaintiffs for the damage suffered by Plaintiffs.

16.     Defendant United Technical Consultants, L.L.C. is a limited liability company incorporated under the laws of the State of Pennsylvania and with its principal place of

business in Malvern, Pennsylvania. Defendant United is an investigative engineering firm which participated in the scheme to defraud as described herein and below and is liable to Plaintiffs for the damage suffered by Plaintiffs.

17. Defendant Glenn Grogan is an individual and a citizen of the State of Pennsylvania. Defendant Grogan worked for Defendant United and participated in the scheme as more fully described below and is liable to Plaintiffs for the damage suffered by Plaintiffs.

18. Defendant Simsol Insurance Services, Inc. is a corporation incorporated under the laws of the State of Florida with its principal place of business in Niceville, Florida. Defendant Simsol is an adjusting firm that participated in the scheme to defraud as described herein and below and is liable to Plaintiffs for the damage suffered by Plaintiffs.

19. Defendant VaRonda Hamilton is an individual adjuster. She resides in Haynesville, Louisiana. Hamilton participated in the scheme as more fully described below, and is liable to Plaintiffs for the damage suffered by Plaintiffs.

20. Defendant Hartford Insurance Company of the Midwest is an insurance company organized under the laws of the State of Indiana with its principal place of business in the State of Connecticut. Hartford is a "Write Your Own" ("WYO") carrier participating in the NFIP pursuant to the National Flood Insurance Act ("NFIA"), as amended 42 U.S.C. § 4001, *et seq.* Hartford issued Standard Flood Insurance Policies ("the Policies") in its own name as a fiscal agent of the United States administering federal funds. Pursuant to 44 C.F.R. § 62.23 (d) and (i)(6), Hartford was and is responsible for arranging the adjustment, settlement, payment, and defense of all claims arising under the Policies. Under 44 C.F.R. § 62, Appendix A, the federal government reimburses Hartford for fees and expenses incurred in the defense of litigated claims.

## SUBSTANTIVE ALLEGATIONS

### *Background Facts*

21.     Stephen and Sarise Dweck purchased, for good and valuable consideration, a policy of

insurance, bearing policy number 87050058832012 (the "Policy"), from Defendant

Hartford.   The Policy insured the Premises against the risk of flood, for the term

commencing on June 28, 2012 and ending on June 28, 2013.   The Policy provided

coverage of up to $250,000 for the building.   The Policy was in full force and effect

during all times material to this action.   At all times relevant herein, Plaintiffs maintained

an insurable interest in the Premises.

22.     On October 29, 2012, Super Storm Sandy ("Sandy") made landfall in New Jersey and

tore its way inland, throughout the surrounding areas.   In the early evening hours of that

day, Sandy blew through New York City, destroying homes and businesses in its path.

At approximately 6:00 PM on October 29, 2012, Sandy hit the southern tip of Brooklyn,

New York.   Sandy's storm surge and flood waters hit and entered Plaintiffs' home,

causing catastrophic damage to the property.   The damage sustained by the Premises was

caused by a covered cause of loss under the Policy – flood.

23.     Plaintiffs timely filed a claim with their flood carrier, Hartford. Hartford employed the

services of Defendant Simsol to adjust the claim and determine the amount of the loss.

Defendant Simsol assigned individual adjuster Defendant Hamilton to adjust the claim.

On or about December 4, 2012, Hamilton and her husband, Michael Hamilton, inspected

the Premises and observed first-hand the extensive damage to the Dwecks' home caused

by Sandy. Before receiving an engineering report, Hamilton issued an estimate for the damages to Plaintiffs' home for approximately $40,000.[1]

24.     Simsol assigned a portion of the claim to Defendant United and Defendant Grogan. Defendants United and/or Grogan in turn assigned the claim to Defendant HiRise to conduct an engineering inspection of the property to determine the nature and extent of the damages.

25.     HiRise assigned Harold Weinberg, a highly regarded and well respected New York State licensed Professional Engineer, to conduct the engineering analysis and write a report. On January 11, 2013, Weinberg inspected the Dwecks' damaged home. Following his inspection, Weinberg wrote a report dated March 15, 2013, in which he concludes "…the flood waters caused damage to the inside of the building in the cellar and on the first floor…The damage at the lower part of the building was caused by flooding and is responsible for about 100% in total…The entire cellar including the slab and the foundation walls were damaged extensively. The surge of the water washed out much of the interior of the cellar space and the interior of the first floor…No major damage existed prior to storm Sandy to the building proper."[2] Weinberg affixed his wet-ink seal of New York State engineer license[3] and submitted the report to HiRise for issuance to Hartford and the Dwecks.

26.     On March 18, 2013, Defendants HiRise and Pappalardo altered Weinberg's professional report by removing the findings and observations cited above and adding opposite conclusions.[4] The altered report wrongfully concluded that the damage to the Dwecks'

---

[1] *See* Plaintiffs' Exhibit 1 – Hamilton's estimate of damages to Plaintiffs' home.
[2] *See* Plaintiffs' Exhibit 2 – Weinberg's March 15, 2013 report.
[3] *Id.*
[4] *See* Plaintiffs' Exhibit 3 – March 18, 2013 report altered by HiRise and Pappalardo.

home was pre-existing, and caused by the consolidation of soil beneath the front stoop of the house.[5] Additionally, photograph captions were materially and adversely changed.[6] Without permission, HiRise then affixed Weinberg's engineer licensee seal to the altered report and falsified conclusions.[7] The alterations to the report were never shown to or approved by Weinberg prior to affixing his professional seal.[8] Weinberg did not give HiRise authority to alter his March 15th report.[9] After altering the report, HiRise and Pappalardo submitted the report to Defendants United and Grogan, who in turn, provided it to Hartford.[10] Hartford used the fraudulently altered report as a basis to deny the vast majority of the Dwecks' claim.

27.     Upon receipt of the March 18th report and denial of their claim, the Dwecks' were stunned by the opposite conclusions reached in the altered report. The Dwecks sought the advice of legal counsel and retained Pinczewski & Shpelfogel, P.C. to assist them in obtaining the full Policy proceeds to which they are entitled. With a copy of the March 18th report in hand, bearing Weinberg's signature and professional seal, the Dwecks and their attorney contacted Weinberg to discuss his purported findings with him. Upon reviewing the altered report, Weinberg was incredulous and stated the March 18th report was not the one he submitted. He informed Plaintiffs that the report had been radically altered without his permission, and that entire sections containing his findings and explanations had been removed and replaced with findings that were opposite of his. He represented to Plaintiffs that his actual conclusion had been that Sandy was directly

---

[5] *Id.*
[6] *Compare* Plaintiffs' Exhibit 2 to Plaintiffs' Exhibit 3 – 1) compare the caption under the bottom photo on page 11 of Exhibit 2 with its parallel on page 12 of Exhibit 3; and 2) compare the caption under the top photo on page 14 of Exhibit 2 with its parallel on page 15 of Exhibit 3.
[7] *Id.*; *see also* Plaintiffs' Exhibit 4 – Comparison of Signatures from March 15th and March 18th reports.
[8] *See* Plaintiffs' Exhibit 5 – Affidavit of Engineer Harold Weinberg.
[9] *Id.*
[10] *See* Plaintiffs' Exhibit 2.

responsible for the damage. Weinberg denied stating that the damage resulted from settlement of soil or was preexisting, contrary to what was stated in the report bearing his forged signature provided by Hartford and its adjusters. To date, Weinberg stands by his observations and findings set forth in his March 15th report.[11]

28.  When confronted with the issue, HiRise and Pappalardo admitted to altering the findings and results contained in the March 15th report. **Pappalardo is not a licensed engineer in any state.** Yet, Pappalardo admitted that he altered Weinberg's report based upon Pappalardo's "experience and dealings with similar claims,"[12] reversing the opinions of Weinberg, an experienced Professional Engineer who has been licensed in Brooklyn, New York for over 50 years.  Pappalardo admitted to never showing the altered report to Weinberg and simply lifting Weinberg's signature from the March 15th report and affixing it to the March 18th report.[13]

29.  On July 2, 2013, Hartford was formally notified of the fraudulently altered report which led to the denial of the vast majority of the Dwecks' claim and the confrontation with and admissions of HiRise and Pappalardo.[14]

30.  In response to Plaintiffs' July 2nd letter to Hartford, the Dwecks' attorney received a response from Defendant Nielsen Law Firm and Defendant Treas on behalf of Hartford.[15] Instead of addressing the altered engineering report, Hartford, through its counsel – nearly one year after the storm – formally demanded the Dwecks' compliance with another engineering analysis to be performed by an unknown engineer.[16]  Defendants

---

[11] *See* Plaintiffs' Exhibit 5.
[12] *See* Plaintiffs' Exhibit 6 - July 2, 2013 letter from Dweck's counsel to Hartford describing the fraudulent conduct.
[13] *Id.*
[14] *Id.*
[15] *See* Plaintiffs' Exhibit 7 - August 27, 2013 letter from Treas and Nielsen Law Firm to Dweck's counsel.
[16] *Id.*

Hartford, Nielsen Law Firm, and Treas threatened substantive denial of Dwecks' claims, stating, "[i]f the Dwecks choose to refuse to cooperate in this demand, their refusal to cooperate will be considered in determining whether any further benefits are owed under the SFIP."[17]

31.     After additional unsatisfactory correspondence with Hartford's counsel,[18] the Dwecks had no choice but to cooperate with the demand of Hartford, Nielsen Law Firm, and Treas. On November 7, 2013, a second engineering analysis was performed by Donan Forensic Engineering and Paul S. Burtis.[19] Unsurprisingly, Donan and Burtis concluded that the home was not structurally damaged by hydrodynamic, hydrostatic, frictional, or buoyant forced from flood.[20] This subsequent report was used by Hartford to deny the Dwecks' claim.[21]

32.     After receiving the second denial, the Dwecks' lawyer appealed Hartford's unfounded denials to FEMA on January 23, 2014. FEMA was provided evidence of the fraudulently altered Weinberg report.[22]

33.     On June 19, 2014, James Sadler, Director of Claims for the Federal Insurance and Mitigation Administration, denied the Dwecks' appeal. In FEMA's denial, Sadler, as an agent of FEMA, failed to acknowledge the existence of the alterations made to Weinberg's March 15th report.[23] Sadler knowingly disregarded the evidence of fraud in front of him or consciously avoided it.

---

[17] *Id.*
[18] *See* Plaintiffs' Exhibit 8 - September 16, 2013 correspondence between counsel; Plaintiffs' Exhibit 9 - September 17, 2013 correspondence between counsel; Plaintiffs' Exhibit 10 - September 20, 2013 correspondence between counsel.
[19] *See* Exhibit 11 – Hartford denial letter with Donan Engineering Report.
[20] *Id.*
[21] *Id.*
[22] *See* Plaintiffs' Exhibit 12 – Dwecks' Appeal to FEMA
[23] *See* Plaintiffs' Exhibit 13 − FEMA's denial of appeal.

### *Liability of HiRise and Pappalardo*

34.   In conspiracy with the other Defendants, HiRise and Pappalardo altered the March 15th engineering report submitted by Weinberg. Defendants HiRise and Pappalardo altered the report with the specific intent to defraud Plaintiffs of their legal benefits under the contract with Hartford.  HiRise and Pappalardo used the mail, telephone, and/or email to perpetrate the fraud.   Based on information and belief, a similar fraud has been perpetrated by HiRise and Pappalardo on other Class Members.

### *Liability of Nielsen Law Firm and Treas*

35.   Nielsen Law Firm partner Gerald Nielsen has boasted to Congress that virtually every major insurance company that participates in the NFIP's Write Your Own flood insurance program "utilizes Nielsen, Carter, & Treas, L.L.C. to handle its NFIP-related litigation on a national basis[.] In addition, [Gerald Nielsen] teaches the workings of the NFIP to adjusters, insurance agents, and insurance company personnel."[24] Indeed, Defendant Nielsen Law Firm is defense liaison counsel on the Multidistrict Litigation docket ("MDL") stemming from Hurricane Sandy.[25]

36.   In his July 2, 2013 letter, the Dwecks' attorney outlined in detail the fraud that had been perpetrated on Plaintiffs.  Defendants Nielsen Law Firm Treas responded on behalf of Hartford that "the matter has been evaluated."  Defendants Nielsen Law Firm and Treas did not deny that HiRise and Pappalardo had committed mail and/or wire fraud; they simply threatened Plaintiffs with denial of their claim if Plaintiffs did not comply with their demand for an inspection by another engineer of Hartford's choosing.  This case

---

[24] *See* Plaintiffs' Exhibit 14 – Gerald Nielsen's Congressional testimony. The quoted passage is on page 3 of the statement.

[25] Gerald Nielsen of Nielsen Law Firm filed a pleading in 1:14-mc-00041-CLP-GRB-RER stating that the defense costs for Hurricane Sandy litigation will likely exceed nine figures - *see* DE [413].

was not in litigation until November 25, 2014; therefore, it is apparent that Nielsen Law Firm was directing the actions of Defendants prior to litigation. Defendants Nielsen Law Firm and Treas knew that HiRise had fraudulently altered this report and had committed mail and/or wire fraud.

37. Based on information and belief, Nielsen Law Firm and Treas directed, supervised, and/or participated in the fraud on the Plaintiffs and Class Members who were defrauded in a similar manner. Lawyers cannot escape responsibility for the wrongdoing they supervise or ratify by asserting that it was their agents, not themselves, who committed the wrong.[26]

38. It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.[27] Additionally, a lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is illegal or fraudulent.[28] Here, Defendants Nielsen Law Firm and Treas were aware of the fraudulently altered reports. Rather than counseling its client to rely on the supported conclusions of Weinberg, an experienced, licensed engineer, Defendants Nielsen Law Firm and Treas engaged in, and assisted its client in, the fraudulent conduct by using the fraudulent report against Plaintiffs to demand a subsequent engineering inspection or else Plaintiffs' claim would be denied for failure to comply.

39. Alternatively, Defendants Nielsen Law Firm and Treas, at the very least, are liable to Plaintiffs and Class Members under the doctrine of conscious avoidance. The doctrine of conscious avoidance is satisfied when a person deliberately shuts his eyes to an obvious means of knowledge, and therefore has the sufficient *mens rea* for the "knowing" element

---

[26] *United States ex rel. Vuitton et Fils S.A. v. Klayminc*, 780 F.2d 179, 188 (2d Cir. 1985).
[27] NY R. PROF. CONDUCT 8.4(c); LA R. PROF CONDUCT 8.4(c).
[28] NY R. PROF. CONDUCT 1.2(d); LA R. PROF CONDUCT 1.2(d).

of a criminal offense.[29] Even in a conspiracy case in which specific intent must be proven, such as mail fraud cases, conscious avoidance is sufficient to establish *mens rea*.[30] At least, Defendants Nielsen Law Firm and Treas were willfully blind to the legal and fraudulent actions of the other Defendants.

### *Liability of United and Grogan*

40.    United was notified immediately regarding the fraudulent engineering report.[31] Pappalardo admitted that he had altered the findings in the engineering report. Pappalardo admitted that he altered Weinberg's report and simply copied Weinberg's signature to the "revised" report without the permission of Weinberg.[32] United and Grogan had knowledge of this conduct and participated in the fraud perpetrated on Plaintiffs. Based on information and belief, a similar fraud has been perpetrated by United and Grogan and the other Defendants on Class Members. Research on Defendant Grogan reveals he has a history of engaging in criminal activity.[33] In situations where United and Grogan may not have had specific knowledge of altered reports, they were aware of this ongoing scheme and are liable under the doctrine of conscious avoidance.

41.    United and Grogan stand to benefit from this fraudulent scheme. The more United and Grogan contribute to Hartford's inflated expenses, the easier it is for United and Grogan to ensure future assignments and expense payments from Hartford.

---

[29] *United States v. Quinones*, 635 F.3d 590, 601 (2d Cir. 2011).
[30] *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1195 (2d Cir. 1989).
[31] *See* Plaintiffs' Exhibit 6.
[32] *Id.*
[33] A LexisNexis report on Mr. Grogan shows that he plead guilty to theft by failing to make required disposition of funds received and violations of Pennsylvania Securities Act – Sales and Purchases. There are several other criminal charges listed against Mr. Grogan with unknown dispositions. Mr. Grogan was an attorney in Pennsylvania, but was disbarred for misconduct.

### *Liability of Hartford, Simsol, and Hamilton*

42. Hartford, Simsol, and Hamilton knew or were willfully blind to the fact that HiRise was fraudulently altering engineering reports to deny legitimate claims. On July 2, 2013, Hartford and Simsol were formally notified of the fraudulent and deceptive actions of HiRise and Pappalardo.[34]

43. Defendant Hartford retained Defendants Simsol and Hamilton to perform adjusting services. Upon inspection of the Premises, Hamilton observed the extensive damage to the home first-hand. The engineering conclusions touted by HiRise and Pappalardo directly contracted facts observed by Hamilton.

44. Hartford, Simsol, and Hamilton specifically denied Plaintiffs' claim for full Policy proceeds with knowledge of the alterations of the findings in the report. Hartford, Simsol, and Hamilton directed and/or participated in the fraud on Plaintiffs, and Hartford, Simsol, and Hamilton directed and/or participated in the commission of the mail and/or wire fraud. Despite the fact that Hartford, Simsol, and Hamilton knew or should have known of the alteration of the engineering report, Hartford used the falsified report as an excuse to deny Plaintiffs' claim for benefits.

45. Based on information and belief, a similar fraud has been perpetrated by Hartford, Simsol, Hamilton, and the other Defendants on Class Members.

46. Hartford's, Simsol's, and Hamilton's failure to investigate the facially inaccurate engineering report after having the above knowledge constitutes "willful blindness" to the illegal and fraudulent actions of HiRise, Pappalardo, United, and Grogan; therefore, Hartford, Simsol, and Hamilton are liable under the doctrine of conscious avoidance.

---

[34] *See* Plaintiffs' Exhibit 6.

47.     Hartford stands to benefit from this fraudulent scheme both directly and indirectly. Based on information and belief, due to the way in which the WYO program is funded by FEMA, Hartford actually reaps greater profit by driving up claims handling expenses and denying legitimate claims. Further, Hartford avoids the threat of a government audit by reducing the amount paid on claims, even if legitimate. Hartford is highly motivated to avoid an audit. In 2009, the GAO audited other WYO carriers and determined that they had significantly overbilled FEMA for administering the WYO program. Hartford is motivated by the desire to keep their ill-gotten gains by driving up claims handling expenses while reducing the amount paid on claims. Hartford acted in concert with HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, and Hamilton to achieve this unlawful purpose.

48.     Simsol and Hamilton also stand to benefit from this fraudulent scheme. The more Simsol and Hamilton contribute to Hartford's inflated expenses, the easier it is for Simsol and Hamilton to ensure future assignments and expense payments from Hartford.

## RICO ALLEGATIONS

### The HiRise Enterprise

49.     HiRise Engineering is a "person" within the meaning of 18 U.S.C. §1961(3).

50.     Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals and entities associated in fact that Plaintiffs refer to as the HiRise Enterprise: (1) HiRise, (2) Pappalardo, (3) Nielsen Law Firm, (4) Treas, (5) United, (6) Grogan, (7) Simsol, (8) Hamilton, and (9) Hartford.

51.     The HiRise Enterprise is an ongoing organization which engages in, and whose activities affect, interstate commerce. The members of the HiRise Enterprise function as a continuing unit as described below and share the common purpose of creating illegitimate

engineering reports to be used to fraudulently deny, in whole or in part, insurance claims for their individual and collective economic gain.

52.     While HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford participate in and are members of the HiRise Enterprise, they also have an existence separate and distinct from the enterprise. The common goal was to reduce payments on legitimate insurance claims, thereby driving up costs of claims handling and investigation of these claims. This generated profits for the enterprise as a whole and for participating individuals. Defendant Hartford also benefitted by avoiding a government audit through inflating costs and reducing claims paid.

53.     In order to successfully defraud Plaintiffs and Class Members in the manner set forth above, HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford needed a system that would allow them to deny insurance claims, in whole or in part, and thereby avoid an audit by FEMA. Additionally, Hartford stood to benefit directly from increasing claims handling expenses due to the manner in which FEMA reimburses WYO carriers for their participation in the NFIP. Due to incentives in the reimbursement program, WYO carriers can actually profit by incurring additional expenses. HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford took advantage of the incentives of the reimbursement program to prolong litigation in order to charge and collect unnecessary claims handling expenses and attorney's fees. Hartford participated in the scheme so that it could justify denying or underpaying claims, to avoid FEMA audits and having to reimburse FEMA for overpayments.

54. HiRise controls and operates the HiRise Enterprise as follows:

(a) By falsifying and altering engineering reports in order that the HiRise Enterprise can deny or underpay valid insurance claims;

(b) By falsifying and altering engineering reports to be utilized to deny or underpay valid insurance claims, HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford can charge unnecessary and/or inflated litigation costs;

(c) By falsifying and altering engineering reports to be utilized to deny or underpay valid insurance claims, Hartford can avoid being audited by FEMA and can avoid reimbursing FEMA for an overpayment of a claim; and

(d) By falsifying and altering engineering reports to increase claims handling costs, the HiRise Enterprise passes on the expenses to FEMA to justify additional payments to Hartford.

55. As set forth above, the HiRise Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford engage.

**Predicate Acts**

56. Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (relating to mail fraud) and 18 U.S.C. §1343 (relating to wire fraud). As set forth below, HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford have and continue to engage in conduct violating each of these laws to effectuate their scheme.

57. For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations, or promises, HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford are in violation of 18 U.S.C. §1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter

and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to contracts, invoices, correspondence, payments, and altered reports.

58.    For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford also in violation of 18 U.S.C. §1343, transmitted and received by wire matter and things which include but are not limited to contracts, invoices, correspondence, payments, and altered reports.

59.    The matter and things sent by HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford via the Postal Service, commercial carrier, wire or other interstate electronic media include, *inter alia,* altered reports containing false and fraudulent misrepresentations that were utilized by Hartford to improperly deny coverage to or underpay Plaintiffs' claim and claims of Class Members.

60.    Other communications sent through or received from the Postal Service, commercial carrier, or interstate wire transmission by HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford included information or communications in furtherance of or necessary to effectuate the scheme.

61.    HiRise's, Pappalardo's, Nielsen Law Firm's, Treas', United's, Grogan's, Simsol's, Hamilton's, and Hartford's misrepresentations, acts of concealment, and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and Class Members and for the purpose of denying Plaintiffs' claim and the claims of Class Members. This was done for the purpose of reducing paid claims to avoid an audit

which would lead to the detection of improper payments and increased cost of claims handling to the direct financial benefit of Defendants.

62. HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material and would be relied upon by Plaintiffs and Class Members. Plaintiffs and Class Members were defrauded as a result of the misrepresentations and omissions as set forth above. In many instances, the fraud involved tens of thousands of dollars in legitimate insurance claims that were denied.

63. As a result, HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford have fraudulently obtained engineering and litigation support fees and expenses. These Defendants were able to charge for unwarranted engineering services and other fees based upon their participation in fraudulently denying legitimate insurance claims.

64. Hartford intentionally denied or underpaid insurance claims. By diminishing the amounts paid on claims, Hartford avoided a government audit on payment amounts and on the actual cost of administering the WYO program. Additionally, due to the reverse incentives, Hartford stood to benefit directly from increasing claims handling costs upon which their payments from FEMA were based.

65. Plaintiffs and Class Members have been injured in their business or property by Defendants' overt acts of mail and wire fraud. Plaintiffs' legitimate claim for their entire insurance policy of $250,000 was denied by Hartford based on fraudulent engineering reports which directly reduced the amount paid to approximately $40,000.

**Pattern of Racketeering Activity**

66.     HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§1341 and 1343 as described above, within the past ten years. In fact, HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford have committed multiple acts of racketeering activity. Plaintiffs' and Class Members' claims were fraudulently denied in whole or in part on different dates, proving separate and definable predicate acts of racketeering activity. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results, and impacted similar victims, including Plaintiffs and Class Members.

67.     The multiple acts of racketeering activity which Defendants committed and/or conspired to commit, or aided and abetted acts, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

## CLASS ACTION ALLEGATIONS

68.     Plaintiffs were the victims of a corrupt and fraudulent criminal enterprise which resulted in deprivation of almost $210,000 in legitimate insurance benefits. Plaintiffs have discovered evidence that other persons similarly situated have been victimized in a similar manner. Plaintiffs have uncovered a fraudulent scheme whereby engineering reports were fraudulently altered to avoid paying legitimate insurance claims.

69. Plaintiffs bring this action against Defendants on their own behalf and, pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure, as a class action on behalf of a class of persons similarly situated which include the following:

> **All persons or entities who were insured by Hartford and filed a flood claim between January 1, 2011 through the present and whose claim was denied in whole or in part based upon an engineering report that was altered by HiRise after the inspecting engineer's report was submitted to HiRise.**

70. Excluded from the Class are Defendants, any entity in which one or more of the Defendants has a controlling interest or is a parent or subsidiary of said Defendants, any individual or entity already represented by counsel for these offenses, or any entity that is controlled by one of more of the Defendants and any of their officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns.

71. Upon information and belief, there are hundreds of members of the Class. Accordingly, the Class is so numerous that joinder of all members is impracticable. The Class is ascertainable, as the names and addresses of all Class Members can be identified in business records maintained by Defendant HiRise and/or Hartford.

72. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to or that directly and irrevocably conflict with, the interests of other Class Members. Plaintiffs are represented by counsel experienced and competent in the prosecution of complex class action litigation.

73. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. Such common questions include, *inter alia*:

a. Whether HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford have engaged in a scheme to deny legitimate insurance claims;

b. Whether HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford have engaged in a scheme to improperly and unlawfully alter engineering reports;

c. Whether HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford are purposefully prolonging litigation for their own financial gain;

d. Whether HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford have engaged in these wrongful acts to avoid audits, thereby causing the denial in whole or in part of Class Members' claims;

e. Whether HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford have engaged in mail and wire fraud;

f. Whether HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford have engaged in a pattern of racketeering activity;

g. Whether HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford constitute an enterprise within the meaning of 18 U.S.C. § 1961(4);

h. Whether HiRise's, Pappalardo's, Nielsen Law Firm's, Treas', United's, Grogan's, Simsol's, Hamilton's and Hartford's overt and/or predicate acts in violation of 18 U.S.C. § 1962(c) proximately caused injury to Plaintiffs' and Class Members' business or property; and

i. Whether HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford fraudulently concealed their scheme.

74. Plaintiffs' claims are typical of the claims of the Class Members because they originate from the same illegal, fraudulent, and confiscatory practices of HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford. HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford acted in the same way toward Plaintiffs and Class Members.

75.   Plaintiffs will fairly and adequately protect the interests of the Class Members, are committed to the vigorous prosecution of this action, have retained counsel competent and experienced in class litigation and have no interests antagonistic to or in conflict with those of the Class. As such, Plaintiffs are adequate Class representatives.

76.   The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the Class.

77.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Further, the expense and burden of individual litigation make it impossible for all the Class Members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## AND AS FOR THE FIRST CAUSE OF ACTION
### VIOLATION OF 18 U.S.C. § 1962(c)

78.   Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

79.   This claim for relief arises under 18 U.S.C. §1962(c).

80.   As set forth above, HiRise, Pappalardo, Nielsen Law Firm, Treas, United, Grogan, Simsol, Hamilton, and Hartford have violated 18 U.S.C. §1962(c) by conducting or participating, directly or indirectly, in the conduct of the affairs of the HiRise Enterprise through a pattern of racketeering.

81.   As a direct and proximate result, Plaintiffs and Class Members have been injured in their business or property by the predicate acts which make up Defendants' patterns of racketeering activity through the HiRise Enterprise.

82.    Specifically, Plaintiffs and Class Members have been injured in their business or property by having their legitimate insurance claims denied in whole or in part as a result of the scheme.

## AND AS FOR THE SECOND CAUSE OF ACTION
### BREACH OF CONTRACT

83.    Plaintiffs hereby incorporate by reference as if fully set forth herein all of the preceding paragraphs.

84.    Plaintiffs and Defendant Hartford entered into a contract when Plaintiffs purchased, and Hartford issued, the Policy.

85.    The Policy provided flood insurance coverage to Plaintiffs for physical damage to the Premises caused by flood.

86.    Plaintiffs fully performed under the contract by paying all premiums and cooperating with Defendant Hartford regarding the Claim. Plaintiffs complied with all conditions precedent to their recovery herein, including appropriate and adequate demands, or Hartford waived or excused such conditions precedent.

87.    Defendant Hartford failed to perform and materially breached the insurance contract when it wrongly failed to pay and refused to reimburse Plaintiffs the monies they are owed for damages to the Premises covered under the Policy.

88.    As a result of Hartford's breach of contract, Plaintiffs suffered damages.

## AND AS FOR THE THIRD CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

89.    Every contract contains the implied covenant of good faith and fair dealing, by which the contracting parties agree to act in good faith and deal fairly with one another, and abstain from engaging in bad faith and unfair dealing that would deprive the other party of the

benefits of the insurance contract or cause undue hardship or harm. It also requires an insurer, *inter alia*, to investigate claims in good faith and to reasonably and promptly pay covered claims.

90.   As described above and throughout this Complaint, Defendant acted in bad faith in the administration and denial of Plaintiffs' Claim.

91.   As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs suffered damages.

## DAMAGES

92.   Plaintiffs were denied their legitimate claim for policy benefits which resulted in a loss exceeding $210,000. The denial of Plaintiffs' claim thwarted Plaintiffs' ability to properly restore the Premises. Under 18 U.S.C. §§ 1964(c), Plaintiffs are entitled to treble damages, costs, attorney's fees, and prejudgment interest.

93.   By virtue of its various breached on contract, including its failure to fully reimburse Plaintiffs' for their covered losses, Defendant Hartford is liable to and owes Plaintiffs for the actual damaged they sustained as a foreseeable and direct result of the breach, all costs associated with recovering, repairing and/or replacing the covered properties, together with interest and all other damages Plaintiffs may prove as allowed by law. Plaintiffs are entitled to compensatory and consequential damages, in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum rate allowable by law.

## JURY DEMAND

94.   Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and in favor of the Class Members

against Defendants as follows:

A.  Determining that this action may be maintained as a class action under FED. R. CIV. P. 23(a) and (b);

B.  Declaring that Defendants have violated Section 1962(c) of RICO;

C.  Ordering Defendants to pay treble the amount of damages suffered by Plaintiffs and the Class as a result of Defendants' violations of Section 1962(c) of RICO;

D.  Finding Defendant liable for breach of contract and for breach of the implied covenant of good faith and fair dealing;

E.  Declaring that Plaintiffs are entitled to coverage under the Policy for Plaintiffs' damages to the Premises caused by flood;

F.  Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees and the reimbursement of expenses in amounts to be determined by the Court;

G.  Declaring that Defendant acted in bad faith in its investigation, administration, and denial of Plaintiffs' claim;

H.  Awarding to Plaintiffs compensatory and consequential damages against Defendant, in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum rate allowable by law; and

I.  Granting such other relief as this Court deems to be just and proper.

DATED: December 3, 2014

**THE MOSTYN LAW FIRM**

*/s/ J. Steve Mostyn*
J. Steve Mostyn
JM9387
Texas State Bar No. 00798389
3810 West Alabama Street
Houston, Texas 77027
(713) 861-6616 (Office)
(713) 861-8084 (Facsimile)

**PINCZEWSKI & SHPELFOGEL, P.C.**

*/s/ Mitchell B. Shpelfogel*
Mitchell B. Shpelfogel, Esq.
Moshe Y. Singer, Esq.
2753 Coney Island Avenue, 2nd Floor
Brooklyn, New York 11235
Phone: (718) 891-8200
Fax: (718) 891-5600

**ATTORNEYS FOR PLAINTIFFS**